IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KEVIN FUREY                         :
                                    :        CIVIL ACTION
                                    :
          v.                        :
                                    :
POLICE OFFICER TRAVIS WOLFE,        :
et al.                              :        NO.  10-1820


## MEMORANDUM AND ORDER

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

In this action, Plaintiff Kevin Furey ("Plaintiff") alleges that his civil rights were

violated by Police Officer Travis Wolfe ("Officer Wolfe"), the City of Philadelphia (the

"City"), and Philadelphia Police Commissioner Charles Ramsey ("Commissioner

Ramsey") (collectively, "Defendants"), as a result of Officer Wolfe making an off-duty

arrest of Plaintiff in the early morning hours of April 5, 2008.  Presently before the court

are multiple discovery motions filed by the parties, as well as the Philadelphia District

Attorney's assertion of privilege and oral motion to quash with respect to the deposition

of Charles Erlich.  I held oral argument on all of the motions on February 8, 2011.[1]

_____

[1]The Honorable Mary A. McLaughlin has referred all discovery-related issues in
this case to the undersigned.

# I.    FACTS AND PROCEDURAL HISTORY

As alleged in the complaint, on April 5, 2008, Plaintiff, an undergraduate at Temple University, was arrested by Officer Wolfe and charged with several criminal offenses.  See Compl. at ¶¶ 9, 14, 30.  Plaintiff entered an Accelerated Rehabilitative Disposition ("ARD") program, and subsequently completed the program.  See id. at ¶ 18.  Meanwhile, following a disciplinary hearing held at Temple University at which Officer Wolfe testified, Plaintiff was expelled from the university.  See id. at ¶ 30.

On March 10, 2010, Plaintiff commenced this action in the Philadelphia Court of Common Pleas, and on April 23, 2010, Defendants removed it to this Court.  See Doc. 1.  Plaintiff alleges that his civil rights were violated pursuant to 42 U.S.C. § 1983.  See Compl. at First Cause of Action.  Plaintiff also alleges various state law claims against Officer Wolfe.  Id. at Second Cause of Action.  Among other things, Plaintiff alleges that Officer Wolfe  unlawfully used force against him without probable cause to believe he had committed a crime, assaulted Plaintiff, subjected him to an unlawful arrest, and committed perjury.  See id. at ¶¶ 9-16.  Plaintiff further alleges that Officer Wolfe's conduct was the result of policies, practices and customs and deliberate indifference on the part of the City and Commissioner Ramsey.  See id. at First Cause of Action.

Several disputes arose during the course of discovery, resulting in formal motions and the entry of an Order dated January 14, 2011, in which I scheduled oral argument on all pending discovery motions.  See Doc. 41.  In addition, on January 31, 2011, the parties

contacted me by telephone during the deposition of Assistant District Attorney Charles

Ehrlich to address privilege assertions made by counsel for the Philadelphia District

Attorney ("DA").[2]  I appended this informal dispute to the February 8th oral argument

and gave both Plaintiff's counsel and the DA the opportunity to submit letter briefs.  See

Docs. 45 & 46.

On February 8, 2011, I heard oral argument on all pending formal discovery

motions, on the DA's assertion of privilege related to the Ehrlich deposition, and on the

DA's  motion to quash Ehrlich's deposition made for the first time in his letter brief.

## II.   DISCUSSION

A trial court has broad discretion to fashion discovery orders.  See Florsheim Shoe

Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions

of the scope and conduct of discovery are, of course, committed to the discretion of the

trial court.").  In the Third Circuit, "it is well recognized that the federal rules allow broad

and liberal discovery."  Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999) (citations

omitted).  With this in mind, I turn to the parties' myriad discovery disputes.

### A.   Plaintiff's Motion to Compel Discovery Responses (Doc. 28)

Plaintiff's first motion seeks to compel full and complete responses to Plaintiff's

initial interrogatories and requests for production, arguing that Defendants' general

---

[2]Mr. Ehrlich was the former Chief of the Municipal Court Trial Unit in the
Philadelphia DA's Office.  See Doc. 46 at 1.

objections, specific objections and reservations of rights as to those requests are insufficient.  See Doc. 28; N.T. 02/08/11 at 49-90.  Defendants oppose the motion, arguing that their objections based on relevance and the breadth and scope of Plaintiff's discovery requests ought to stand.  See Doc. 31.[3]

Given the broad nature of the materials sought by Plaintiff, and the equally broad objections asserted by Defendants, I will begin by defining the broad outlines of permissible discovery in this case.  Many of the records described below as discoverable have already been provided, but discovery may have to be supplemented in certain areas.

First, because Officer Wolfe is a named defendant in this case, records related to his performance as a Philadelphia Police Officer are highly relevant.  Therefore, records of his training and all allegations of misconduct, both off-duty and on-duty, are relevant and must be provided.  Defendants state that this has been done.

Second, this case involves allegations of excessive force, false arrest and malicious prosecution arising from an incident in which Officer Wolfe confronted Plaintiff while off-duty and brandished, but did not discharge, a firearm, and attacked and threw Plaintiff to the ground without provocation or cause.  I reject Plaintiff's argument that all allegations of police misconduct are relevant to his claim and am persuaded that discovery of a broad category of alleged excessive force and false arrest investigations

_____

[3]Although Plaintiff asserted at oral argument that Defendants' objections were untimely, see N.T. 02/08/11 at 58 & 92, I decline to rule on that basis.

would be overbroad and unduly burdensome.  The presence of a <u>Monell</u>[4] claim entitles Plaintiff to discovery beyond the scope of the April 5, 2008, incident, as Plaintiff is entitled to discover whether the force, arrest and prosecution, if they violated Plaintiff's constitutional rights, were the result of unlawful police practices and policies.  Balancing the competing interests, I conclude that Plaintiff is entitled to discovery of investigations in which an off-duty officer has been found by the Philadelphia Police Department or a court to have used excessive force in making an arrest or to have made a forcible arrest without provocation.

Third, Plaintiff alleges that Officer Wolfe committed perjury and that the Police Department has a practice of protecting perjurious officers, and in support references an Internal Affairs Department ("IAD") report that did not entirely credit Officer Wolfe's statements regarding the danger that Plaintiff presented.  I conclude that Plaintiff is entitled to discovery related to investigations of perjury by police officers.  This discovery is not limited to off-duty officers, because officers testify in their official capacity regardless of whether they were on- or off-duty at the time of the underlying incident(s). However, because discovery concerning all false statements would be overbroad and unduly burdensome, I will similarly limit the production in this area to investigations in

---

[4]In <u>Monell v. New York City Dept. of Soc. Serv.</u>, 436 U.S. 658 (1977), the United States Supreme Court held that municipalities, and municipal employees acting in their official capacity, can be held liable for violations of constitutional rights through section 1983 actions.

which an officer has been found by the Police Department or a court to have provided perjurious testimony.

Fourth, there must be temporal limitations placed on the scope of discovery in all cases. "In setting time limits, courts generally consider relevancy and the burdensomeness of furnishing the information requested." Miller v. Hygrade Food Prod. Corp., 89 F.Supp.2d 643, 657 (E.D. Pa. 2000). Here, I conclude that the full ten-year range requested by Plaintiff in most of his requests is overbroad and unduly burdensome. Instead, I find the period 2003-2008 to be reasonable, as it provides a six-year span of documents which includes the year in which the incident leading to Plaintiff's arrest occurred. Therefore, all discovery permitted in this case is limited to those years.[5]

With these findings as to the relevance, breadth and scope of discovery, it should not be necessary to specifically rule as to each request and response individually. Instead, the specific requests raised by Plaintiff at oral argument should suffice to illustrate how the limitations should be applied.

Plaintiff argues that he is entitled to "any studies, investigations regarding the police department either inter-departmental or extra-departmental," including materials related to excessive force, perjury, and corrupt officers "from 2000 to date." See N.T.

---

[5]Discovery related to specifically to Plaintiff and/or Officer Wolfe is not limited to the period 2003-2008. In addition, documents such as reports, memoranda and investigations (but not articles) which post-date 2008, and which relate to events that occurred during the 2003-2008 period, should also be provided if otherwise consistent with this opinion.

02/08/11 at 50-51. This request is overbroad and should be limited to founded incidents of excessive force, false arrest and perjury as discussed above.

Plaintiff next argues that he is entitled to "use of force complaints" for the period 2000-2010. N.T. 02/08/11 at 65. As previously indicated, "use of force complaints" related to on-duty incidents are not relevant. Additionally, Defendants have provided "use of force complaints" for off-duty officers for the period 2003-2008 (id. at 65-66), as well as the smaller sub-set of Police Board of Inquiry ("PBI") hearings regarding off-duty incidents for the same time period (id. at 75-78). Therefore, Defendants are not obligated to provide documents encompassing additional years, except to the extent that such complaints from 2009 and 2010 relate back to incidents that occurred during the relevant time period.[6] Additionally, if there are files of investigations of founded incidents of off-duty excessive force complaints as discussed above that have not been produced, they should be produced.

Plaintiff also argues that he is entitled to IAD investigations of officer perjury for the period 2000-2010, including a "a log of police officers" which former DA Lynne Abraham allegedly would not allow to testify. N.T. 02/08/11 at 81-82. The request for perjury-related investigations should be limited to founded incidents as discussed above,

---

[6]As I stated during oral argument, Plaintiff is instructed to review discovery received from Defendants and, if such items as the "Printout of [PBI] disciplinary charges" (Doc. 31-13) are found to be missing, Defendants are instructed to provide Plaintiff with a copy. See N.T. 02/08/11 at 76, 80, 95.

and to the period 2003-2008.  Thus, to the extent Defendants have files of investigations of officers found to have committed perjury, they shall be produced as discussed.  As Plaintiff is not seeking any order as to production by the DA's Office (which is not a party), I make no ruling on the DA's production.

Lastly, Plaintiff identified five specific interrogatories in his Second Set of Interrogatories to which Defendants responded with broad objections and no documents. N.T. 02/08/11 at 94 (referring to Doc. 28 at 16).  In Interrogatory 1, Plaintiff requests a list of "every periodical, journal, or magazine on the subject of police management, law enforcement or the like which the Philadelphia Police Department subscribed to from 2000 to the present," including the names of each person who had a subscription.  See Interrogatory 1, Doc. 28 at 16.  As I stated at oral argument, this Interrogatory is overbroad and not relevant.  See N.T. 02/08/11 at 95.  In Interrogatories 2 through 5, Plaintiff seeks information regarding IAD investigations into perjury by all police officers in various settings "from 2000 to date."  Interrogatories 2-5, Doc. 28 at 16-17.  Consistent with the foregoing, any such documents should be limited to founded incidents for the period 2003-2008.

In sum, I will grant Plaintiff's motion to compel in part and deny it in part.  The motion is granted to the extent that Defendants must provide and/or supplement discovery related to Plaintiff's incident, Officer Wolfe, and information regarding founded cindents of excessive force or forcible false arrest by off-duty police officers for the period 2003-

2008, as well as founded incidents of perjury by police officers for the same period. The motion is otherwise denied.

**B.    Plaintiff's Motion to Compel Initial Discovery (Doc. 30)**

Plaintiff next seeks to compel full and complete responses to his initial discovery requests, once again arguing that Defendants' responses are inadequate. See Doc. 30. Defendants oppose the motion. See Doc. 32.

During oral argument, the parties concurred with my conclusion that this motion could be considered in tandem with Plaintiff's first motion to compel, as the motions and responses thereto raise very similar global concerns. See N.T. 02/08/11 at 49-50. For this reason, the analysis set forth in the previous section, and the conclusions made therein, apply equally as to these discovery requests. Therefore, I will also grant this motion in part and deny it in part, and instruct Defendants to provide and/or supplement their initial discovery responses consistent with my prior discussion.

**C.    Plaintiff's Motion to Compel: Fourth Request for Documents (Doc. 33)**

Plaintiff next seeks to compel Defendants to produce documents set forth in Plaintiff's Fourth Request for Production of Documents, specifically the complete file of Lt. Ray A. Saggese of the Philadelphia Police Department's IAD. See Doc. 33. Based on representations from defense counsel at oral argument that Mr. Saggese's entire file has been provided, see N.T. at 100-102, I will deny this motion as moot.

### D.    **Plaintiff's Motion to Compel: Fifth Request for Documents (Doc. 34)**

Plaintiff next seeks to compel Defendants to produce documents set forth in Plaintiff's Fifth Request for Production of Documents, specifically "[t]he [IAD] data base for the years 2000 through 2010, including all complaints filed with the [IAD], the investigations conducted, the decisions reached on all complaints and any sanctions imposed." Doc. 34 at 3. Defendants oppose the motion on grounds that the request seeks irrelevant documents and is overbroad. See Doc. 37 at 1-2.

For reasons similar to those previously discussed, I find Plaintiff's Fifth Request to be overbroad and unduly burdensome. However, sub-sets of the IAD data base related to founded incidents of excessive force or forcible false arrest by off-duty police officers and founded incidents of perjury by police officers, in accordance with the previous discussion, should be produced for the years 2003 through 2008. Therefore, I will grant this motion in part and deny it in part.

### E.    **Defendants' Motion for Protective Order (Doc. 35)**

Defendants have filed a motion for a protective order seeking to prevent the deposition of Police Commissioner Ramsey, a named defendant in the case. See Doc. 35 at 5; N.T. 02/11/08 at 108-15. Plaintiff filed a response in opposition to the motion. See Doc. 40; N.T. 02/11/08 at 115-25.

Motions for a protective order are governed by Rule 26(c) of the Federal Rules of Civil Procedure, which provides that "[a] party or person from whom discovery is sought

may move for a protective order," and authorizes the court, for good cause shown, to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) ("In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.").

The Third Circuit has enunciated a non-exhaustive list of factors that trial courts may consider in determining whether "good cause" exists:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to the public health and safety;

5) whether the sharing of information among litigations will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

Glenmade Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91). The party seeking a protective order bears the burden to establish good cause, which requires more than mere allegations of unspecified, theoretical or generalized

11

harm.  See Fed. R. Civ. P. 26(c); Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("The party seeking the protective order must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

High-ranking officials such as Commissioner Ramsey are generally afforded immunity from testifying on matters of which they have no unique personal knowledge. Hankins v. City of Philadelphia, No. 05-1499, 1996 WL 524334, *1 (E.D. Pa. Sept. 12, 1996) (citations omitted).  "Such immunity is premised on a public policy concern that high ranking government officers be permitted to perform their official tasks without disruption or diversion."  Id. (citing Warzon v. Drew, 155 F.R.D. 183, 185 (E.D. Wis. 1994)).  A party seeking the deposition of a high-ranking government official must demonstrate that the testimony is likely to lead to the discovery of admissible evidence, is essential to the party's case, and that it is not available through any alternate source of less burdensome means.  Id.  "Mere knowledge or awareness of information that may be helpful if discovered is insufficient."  Id. at *3.

Plaintiff argues that he is entitled to depose Commissioner Ramsey because Defendants identified the Commissioner as a "policymaker" (see Doc. 40 at 1, N.T. 02/08/11 at 115), because Commissioner Ramsey's name appears as sender or recipient of memos regarding the investigations into Plaintiff's complaints about Officer Wolfe (N.T.

02/08/11 at 116-17), and because he has been deposed in other cases (id. at 117-19). The fact that Commissioner Ramsey is a policymaker, and that he has been deposed in other cases, does not mean that he has unique personal knowledge regarding Plaintiff's arrest. Additionally, counsel's representation that Commissioner Ramsey receives every memo produced by the IAD, see id. at 110-11, suggests that although he may have learned of Plaintiff's case, it is unlikely that he has unique personal knowledge so as to make his testimony relevant and essential. Finally, the information sought by Plaintiff could be obtained through less burdensome means, such as by deposing IAD and other personnel directly involved with the disciplinary proceedings and/or a Rule 30(b)(6) corporate designee of the City.

For these reasons, I conclude that Defendants have established good cause for the protective order, see Fed. R. Civ. P. 26(c), and that Plaintiff has not met his burden of showing that Commissioner Ramsey's testimony would be likely to lead to the discovery of admissible evidence, is essential to the party's case, and is not available through any alternate source of less burdensome means. Therefore, I will grant Defendants' motion for a protective order as to Commissioner Ramsey's deposition.

### F.    Plaintiff's Motion to Quash Subpoena (Doc. 43)

Plaintiffs have also filed a motion to quash a subpoena Defendants served on Temple University seeking Plaintiff's education records, arguing that the records have no relevance to a civil rights lawsuit claiming false arrest and excessive use of force, and that

they are protected from disclosure by the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). See Doc. 43. Defendants did not file a written response in opposition to the motion, and instead relied on oral argument. See N.T. 02/08/11 at 34-48. At oral argument, Plaintiff offered to produce certain Temple records in lieu of the subpoena, but Defendants declined to withdraw the subpoena on that basis. See id. at 40-42.

In evaluating a motion to quash a subpoena, courts examine whether the moving party has standing to bring the motion, the relevancy of the production sought, whether any privilege or protection applies to the production, and whether the subpoena unduly burdens the party sought to be deposed. See, e.g., Schmulovich v. 1161 Rt. 9, LLC, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). Here, Plaintiff clearly has standing to bring the motion as they are his education records, and there is no issue of burden to Temple to produce the records. In addition, Plaintiff's education records are relevant insofar as he alleges in his Complaint that Defendants' conduct caused damages that include, among other things, his expulsion from Temple University and damage to his reputation. See Compl. at ¶ 30. To the extent Plaintiff's education records could reveal other reasons for his expulsion or other facts bearing on his education opportunities, they are certainly relevant to the question of damages.

Plaintiff argues that his education records are protected by FERPA, and that no exception or waiver applies. See Doc. 43 at 1.[7] The purpose of FERPA is to "assure parents of students . . . access to their education records and to protect such individuals' right to privacy by limiting the transferability (and disclosure) of their records without their consent." Ragusa v. Malverne Union Free Sch. Dist., 549 F.Supp.2d 288, 291 (E.D.N.Y. 2008) (citing Rios v. Read, 73 F.R.D. 589, 597 (E.D.N.Y. 1977)) (additional citations omitted). Under provisions of the statute, a school would not be subject to sanctions for disclosure of education records covered by FERPA when such disclosure is made pursuant to court order. See id. at 291-92 (citing 20 U.S.C. § 1232g(b)(2)(B)). However, a party seeking disclosure of education records protected by FERPA bears "a significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records." Rios, 73 F.R.D. at 598. It follows, therefore, that federal courts have allowed the disclosure of protected education records in circumstances where the interests of the party seeking the records outweighs the students' privacy interest. See, e.g., Ragusa, 549 F.Supp.2d at 292 (teacher's need for disclosure in discrimination action outweighed student's privacy interest); Nastasia v. New Fairfield Sch. Distr., 2006 WL 1699599, *1-2 (D.Conn. June 19, 2006) (requiring disclosure of records of student(s) who made complaints similar to those of plaintiff);

_____

[7]Plaintiff provides no citations for this proposition in his brief or at oral argument, and the materials subsequently submitted to the Court post-oral argument do not contain any legal argument.

Davids v. Cedar Falls Cmty. Sch., 1998 WL 34112767, *3 (N.D. Iowa Oct. 28, 1998) (plaintiff's need for disclosure of records to prove allegation that school engaged in disparate discipline of non-minority and minority students outweighed students' privacy interests).

Given Plaintiff's allegation that he suffered damages to his education and reputation as a result of Defendants' conduct – in effect placing his own education records and reputation at issue – I conclude that Defendants' interest in obtaining Plaintiff's entire education record from Temple University outweighs Plaintiff's privacy interest in those records. Therefore, I will deny Plaintiff's motion to quash.

### G.    DA's Privilege Assertions at Deposition of Charles Ehrlich

During the deposition of Charles Ehrlich conducted by Plaintiff's counsel on January 31, 2011, counsel inquired as to the content of conversations between Mr. Ehrlich and his superior at the time, John Delaney, concerning Plaintiff's ARD.  See N.T. 02/08/11 at 7-9; Ehrlich Dep. 01/31/09 at 24-25.[8]  In response, counsel for the Philadelphia DA asserted two privileges – the law enforcement privilege and the

_____

[8]A copy of Mr. Ehrlich's deposition transcript was provided to the court by Plaintiff's counsel at the conclusion of the February 8th oral argument.  N.T. 02/08/11 at 125.  Given the hostile nature of some of counsel's comments and exchanges during the deposition of Mr. Ehrlich, and subsequently during the deposition of Officer Wolfe (resulting in a telephone call to chambers), I remind counsel that they are expected to comport themselves consistent with their positions as officers of the court.  Plaintiff's counsel is directed to refrain from personal attacks on witnesses or parties (e.g., Ehrlich Dep. 01/31/09 at 73, referring to a party as "this lying S.O.B."), and both counsel are reminded of Rule 30's prohibition of speaking objections.  See Fed. R. Civ. P. 30(c)(2).

deliberative process privilege – which the parties subsequently addressed in informal letter briefs.  See Ehrlich Dep. 01/31/11 at 29-30; Docs. 45 & 46.  I will address the privileges seriatim.

### 1.        Law Enforcement Privilege

Federal courts recognize the law enforcement privilege, which bars the disclosure of police investigatory files.  Startzell v. City of Philadelphia, No. 05-5287, 2006 WL 2945226, *4 (E.D. Pa. Oct. 13, 2006) (Stengel, J.) (citations omitted).  The three purposes of the privilege are to prevent the disclosure of law enforcement techniques, procedures and sources; protect witnesses and others involved in police investigations; and prevent interference with investigations.  Id. (citing Fin. Mgmt. Prof'l Corp. v. United States, No. 88-2272, 1989 WL 35425, at *5 (E.D. Pa. April 11, 1989)) (Newcomer, J.).  The law enforcement privilege must be asserted by "the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted 'precise and certain reasons for preserving' the confidentiality of the communications."  Torres v. Kuzniasz, 936 F.Supp. 1201, 1210 (D.N.J. 1996) (citing United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980)).  In addition, the law enforcement privilege does not bar discovery once investigation and prosecution are complete.  See Startzell, 2006 WL 2945226 at *4.

Here, counsel for the DA asserted the law enforcement privilege during Mr. Ehrlich's deposition.  Because counsel is not the head of the asserting agency, the privilege was not properly invoked.  In addition, I note the investigation regarding

17

Plaintiff's arrest is complete, and that Plaintiff has completed his ARD program. For these reasons, I find the law enforcement privilege does not apply.

## 2.    Deliberative Process Privilege

The deliberate process privilege applies to "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." Startzell, 2006 WL 2945526 at *2 (quoting In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987)). "To determine whether the privilege applies, courts in the Third Circuit apply a two-part test: (1) determine whether the communications are privileged and (2) balance the parties' interests." Id. (citing Redlands Soccer Club, Inc. v. Dep't of the Army, 55 F.3d 827, 854 (3d Cir. 1995)).[9] Step one is satisfied where the information sought is "predecisional and deliberative." Id. (citation omitted). Because the deposition questions inquired into the content of conversations between Mr. Ehrlich and Mr. Delaney regarding whether and under what terms ARD would be offered to Plaintiff, the content is clearly "predecisional and deliberative" for purposes of step one of the privilege.

The second part of the analysis requires a balancing of interests, such as the relevance of the evidence sought to be protected, the availability of other evidence, the seriousness of the issues involved in the litigation, the role of government in the litigation, and the possibility of future timidity by government employees whose

_____

[9]Unlike the law enforcement privilege, and contrary to Plaintiff's assertion at N.T. 02/08/11 at 18, there is no requirement that the deliberative process privilege be asserted by the head of a government agency. See Startzell, 2006 WL 2945526, at * 2.

deliberations would be made public. See Redlands Soccer Club, 55 F.3d at 854; Startzell, 2006 WL 2945226 at *3. Here, Plaintiff's argument implicates the public interest in enforcing civil rights laws, particularly because the deliberative process of government officials is itself in dispute. See Startzell, 2006 WL 2945226 at *4. However, as the court concluded in Startzell, "[t]his is just one factor in the balancing of interests and courts continue to apply the deliberative process privilege even when civil rights are at issue." Id. (citation omitted). Other factors weigh in favor of the DA's assertion of privilege. For example, the government has a strong interest in protecting the internal decisionmaking process of its officials, thus avoiding the burden of having to answer in court for every decision made in regards to investigation, deliberation and/or prosecution. For these reasons, I conclude that the content of Mr. Ehrlich's conversations with Mr. Delaney are subject to the deliberative process privilege. Therefore, I will uphold the DA's informal assertion of privilege on this basis.

### H. DA's Motion to Quash Deposition of Mr. Ehrlich

In his letter brief and at oral argument, the DA also argues that Mr. Ehrlich's deposition should be quashed on the grounds that Plaintiff agreed not to bring a civil action as part of his ARD. See Doc. 46; N.T. 02/08/11 at 13. Although I previously found that Plaintiff cannot ask Mr. Ehrlich about the content of his conversations with Mr. Delaney on the grounds that the information is subject to the deliberative process privilege, it does not follow that Mr. Ehrlich's entire deposition should be quashed. To

the contrary, Mr. Ehrlich testified at his deposition about other, non-privileged aspects of Plaintiff's ARD process, including with whom he spoke and the chronology of events leading up to Plaintiff's entry into the ARD program.  It would be premature at this time (and beyond Judge McLaughlin's referral order) to conclude that Plaintiff's ARD precludes his claim.  Therefore, I will deny the DA's informal motion to quash.

## III.    <u>CONCLUSION</u>

Plaintiff's motions to compel discovery responses and initial discovery (Docs. 28 & 30) are granted in part and denied in part, and Defendants are instructed to provide and/or supplement discovery related to Plaintiff's incident, Officer Wolfe, and information regarding founded incidents of excessive force or forcible false arrest by off-duty police officers for the period 2003-2008, and information regarding founded incidents of perjury by police officers for the same period.  Plaintiff's motion to compel regarding his Fourth Request for Production of Documents (Doc. 33) is denied as moot. Plaintiff's motion to compel regarding the Fifth Request for Production of Documents (Doc. 34) is granted in part and denied in part, and Defendants are instructed to provide sub-sets of the IAD data base related to founded incidents of excessive force or forcible false arrest by off-duty police officers, as well as founded incidents of perjury by police officers, for the period 2003-2008.  Defendant's motion for a protective order (Doc. 35) is granted.  Plaintiff's motion to quash (Doc. 43) is denied.  Finally, the Philadelphia DA's assertion of privilege as to certain testimony by Charles Ehrlich is granted as to the

deliberative process privilege only, and the DA's motion to quash Mr. Ehrlich's deposition is denied.

The parties will be provided ten days from entry of this Memorandum and Order to seek a protective order if any of the material to be produced merits such order, and if the parties have not reached agreement on such order. Also, the parties shall have thirty days from entry of this Memorandum and Order to complete the required production, and to notice and complete any additional depositions.

An appropriate order follows.