```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN FUREY                    :     CIVIL ACTION
                               :
     v.                        :
                               :
TRAVIS WOLFE, et al.           :     NO. 10-1820
```

MEMORANDUM

McLaughlin, J.                                     December 27, 2011

This suit arises from the plaintiff's arrest on April 5, 2008. The plaintiff alleges that Police Officer Travis Wolfe, Police Commissioner Charles Ramsey, and the City of Philadelphia Police Department engaged in violations of his constitution rights, assault, and battery. The defendants filed this motion for summary judgment seeking to enforce the plaintiff's statements on November 24, 2008 that in exchange for participation in an Accelerated Rehabilitative Disposition ("ARD") Program, he would not bring any civil suit against Wolfe or the City. Because the defendants have not met the high burden required to enforce a release-dismissal agreement, the Court will deny the defendants' motion.

I. Relevant Summary Judgment Record

Kevin Furey was arrested on April 5, 2008 as the result of an encounter with an off-duty police officer. The parties dispute the facts surrounding Furey's arrest. That dispute is not relevant to this motion.

Furey was charged with a number of crimes arising from the events on April 5, 2008. On April 15, 2008, the prosecution presented its evidence at a preliminary hearing before Judge Jimmie Moore in the Philadelphia Municipal Court. Judge Moore withheld his decision at that time. On November 24, 2008, Judge Moore was scheduled to give his decision. See Def. Br., Ex. A, Hr'g Tr. 18. Furey was represented at that hearing, and throughout this litigation, by Mrs. Boyce-Furey. Before Judge Moore gave his decision, the parties met for a discussion. The district attorney's office offered to place Furey in the ARD program in exchange for the plaintiff's agreement to several conditions. These conditions were provided to the plaintiff as a handwritten list. See Pl. Br., Ex. W. One of these conditions was a promise not to sue the City or Wolfe. Id.

When asked if the parties were ready for the court's decision, district attorney Holland told the court that "we've reached an agreement." Holland stated that:

> "the Commonwealth is willing to enroll Mr. Furey in the ARD program, with the following stipulations: That there be twelve months of reporting probation, anger management counseling, alcohol counseling, a stay away order from the police officer[,] . . . [a] statement on the record that the officer and the Philadelphia Police Department will not be sued by the defendant in a civil suit; an in-court apology by the defendant to the police officer and, finally, a statement by the defendant on the record that he takes responsibility for his actions on the night in question and that the officer acted reasonably under the circumstances."

Mrs. Boyce-Furey responded "Your Honor, we agree to all of this

and I'm talking on behalf of my client." Hr'g Tr. 19-20. After a brief discussion about whether the statements by the plaintiff should be made at that time or at a later ARD hearing, the plaintiff stated "Everything said by Officer Wolf [sic] on the record involving my actions on that night were correct and truthful and I apologize." The D.A. then requested that the plaintiff state that he would not file a civil suit. Mrs. Boyce-Furey responded, "Your Honor, I don't even know that you can agree to that, but if they want him to say it, let him say it." The plaintiff stated, "I state on the record that I will not sue P.O. Wolf [sic] civilly, C-I-V-A-L-L-Y, or the Philadelphia Police Department. That's how its spelled on the paper." Id. 22-25. The plaintiff later testified that he believed he could decline ARD participation and the conditions sought by the district attorney until he was formally placed in the ARD program. See Pl. Br., Ex. DD, Furey Aff. 2.

Following this hearing, Mrs. Boyce-Furey spoke with attorneys at the district attorney's office to object to the conditions of the plaintiff's ARD placement. Pl. Br., Ex. BB. On June 10, 2009, the plaintiff appeared before an ARD judge and entered into an agreement to participate in the ARD program. Id., Exs. BB, DD, EE, GG. This agreement did not include the release of the plaintiff's civil claims. Id., Exs. BB, EE. The June 10, 2009 agreement did include conditions not mentioned at

the November 24, 2008 hearing, such as fines and a reporting probation.  Id., Ex. EE.  Furey was told on June 10, 2009 that Judge Moore and D.A. Holland did not have the authority to impose the disputed condition on November 24, 2008.  Id. Exs. BB, DD.

The plaintiff filed a civil complaint naming Wolfe and the Philadelphia Police Department as defendants on April 15, 2010.

II. Analysis[1]

In Town of Newton v. Rumery, the Supreme Court held that there is no per se bar to enforcing release-dismissal agreements.[2]  480 U.S. 386 (1987).  A release-dismissal agreement

---

[1] A party is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing law and "genuine" if a reasonable jury could find for the nonmoving party based on the evidence presented on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making its determination, the court must consider the evidence in a light most favorable to the nonmoving party. Sheridan v. NGK Metals Corp., 609 F.3d 239, 251 n.12 (3d Cir. 2010).

[2] The enforcement of a release of federal claims is governed exclusively by federal common law. Town of Newton, 480 U.S. at 392; Livingstone v. N. Belle Vernon Borough ("Livingstone I"), 12 F.3d 1205, 1210 (3d Cir. 1993).  The enforcement of a release of state law claims is governed by the law of that state. Livingstone v. N. Belle Vernon Borough ("Livingstone II"), 91 F.3d 515, 523-24 (3d Cir. 1996).  The Court of Appeals has determined that Pennsylvania would apply standards very similar to federal law when determining enforcement of a release-dismissal agreement. Id. at 539-41.

can be enforced if it is: 1. voluntary, 2. without evidence of prosecutorial misconduct, and 3. enforcement would not adversely affect the relevant public interest. Id. at 398 & n.10. The party seeking to enforce the agreement must prove all three elements. Id. at 392; 401 (O'Connor, J concurring). In several en banc opinions, the Court of Appeals for the Third Circuit has explained how courts should evaluate release-dismissal agreements. See Cain v. Darby Borough, 7 F.3d 377 (3d Cir. 1993) (en banc); Livingstone v. N. Belle Vernon Borough ("Livingstone I"), 12 F.3d 1205 (3d Cir. 1993) (en banc). An oral agreement is subject to more scrupulous review by the courts than a written agreement. Livingstone I, 12 F.3d at 1212.

    A.    The Public Interest Element

A party seeking to enforce a release-dismissal agreement must prove both objective and subjective elements in order to show that the release was in the public interest. Cain, 7 F.3d at 381; Livingstone v. N. Belle Vernon Borough ("Livingstone II"), 91 F.3d 515, 527 (3d Cir. 1996). The objective prong requires that the "facts known to the prosecutor when the agreement was reached must have sufficed to support the prosecutor's proffered public interest and that this public-interest reason be a legitimate one." Livingstone II, 91 F.3d at 527. The subjective prong requires that the public interest reason offered by the prosecutor be the "actual reason for

seeking the release." Cain, 7 F.3d at 381. The actual-reason requirement protects from the danger that the prosecutor acted from an improper motive, even if some later benefit was achieved. Id.; Kandil v. Yurkovick, No. 10-2343, 2011 U.S. App. LEXIS 21057, at *18 (3d Cir. Sept. 20, 2011) (reversing enforcement of an agreement because evidence of police misbehavior in the record "tend[s] to make the prosecutors' subjective motivation a genuine issue of material fact").

One of the greatest dangers of release-dismissal agreements is that prosecutors could use their coercive force to prevent meritorious civil rights lawsuits from revealing and deterring official misconduct. As the Court of Appeals explained, "[l]itigants who bring meritorious section 1983 claims advance societal interests because the vindication of their constitutional rights helps provide an important check on public officials and presumably deters a range of official misconduct." Cain, 7 F.3d at 381. Before entering a release-dismissal agreement, a prosecutor must engage in an individualized assessment of the plaintiff's civil rights claim and conclude that it appears to be "marginal or frivolous at the time" unless some other "unusually strong public interests support the release-dismissal agreement." Livingstone II, 91 F.3d at 529 & n.16.

A court should consider whether the prosecutor made a

determination that the plaintiff's civil rights claims were marginal or frivolous, on what basis she made that determination, whether she knew or should have known of evidence of police misconduct, and whether she knew or should have known of evidence that undercut the allegation of misconduct.  Id. at 531-32; see also Davis v. Ort, 42 F. Supp. 2d 465, 475-76 (D.N.J. 1999) (upholding release-dismissal agreement after detailing the review undertaken by the prosecutor to determine the merits of the plaintiff's civil rights claims); Williams v. Dellorco, No. 05-4129, 2007 U.S. Dist. LEXIS 85721, at *12 (D.N.J. Nov. 20, 2007) (refusing to enforce agreement because "[d]efendants fail to demonstrate that the facts known to the prosecutor at the time the agreement was executed were adequate to support the public interest reason motivating the agreement . . . .").

Here, the defendants do not present evidence of any review undertaken by the prosecutor to determine if any suit by the plaintiff was likely to be frivolous.  The defendants make two arguments in lieu of presenting evidence of the prosecutor's analysis at the time of the agreement.

First, the defendants argue that the plaintiff's statement at the November 24, 2008 hearing that he accepted responsibility and that Officer Wolfe acted reasonably rendered any later civil suit frivolous, because a suit would be directly contradicted by that on-the-record admission.  The Court

7

concludes that this reason is insufficient to uphold the release-dismissal agreement. If this argument were successful, the government could simply require any criminal defendant to state that his claim lacked merit when entering a release-dismissal agreement and could circumvent the important inquiry and burdens required by <u>Livingstone II</u>.

Second, the defendants argue that the prosecutor was motivated by the strong public interest policies implicated in deciding to grant admission to the ARD program. The defendants argue that promoting rehabilitation is an important element of the ARD program, and Furey's agreement not to bring suit was an important element of his acceptance of personal responsibility.

The Court is not convinced that this is an "unusually strong public interest" sufficient to overcome the need to conduct an individualized assessment of the plaintiff's claims. In <u>Cain</u>, the Court of Appeals first defined the need for an individualized assessment of the merits of the plaintiff's potential civil suit. <u>Cain</u>, 7 F.3d 377. In that case, the Delaware County prosecutor had a policy of conditioning referral to the ARD program on the criminal defendant's promise not to bring civil suit. The court held that without an individualized assessment of the defendant's eligibility for ARD and the meritoriousness of the civil rights claim, this policy was unlawfully broad. <u>Id.</u> at 383. The <u>Cain</u> court left open the

8

possibility that conditioning release of civil suits on admission to ARD could be in the public interest, given the right set of circumstances.

Here, there is no evidence of any individualized evaluation of Furey's eligibility for ARD or why the prosecutor believed that acceptance of responsibility and a release of civil claims was essential to promote his success in ARD. The defendants argue that "maintenance of a civil suit would have defeated the plaintiff's full acceptance of responsibility for the incident." Def. Br. 12. If true in this case, that statement could be true of nearly every civil suit arising from an arrest. This comes too close to the sort of blanket policy rejected by the Court of Appeals in Cain.

B.  The Voluntariness Element

The party seeking to enforce a release-dismissal agreement must also show, by clear and convincing evidence, that it was entered into voluntarily. Livingstone II, 91 F.3d at 534. Courts have considered a number of factors to determine if an agreement is voluntary. These factors include: 1. the length of discussion about the proposed agreement; 2. whether there was a clear on-the-record statement made before a judge reflecting the rights being waived by the plaintiff; 3. which party drafted the release-dismissal agreement; 4. whether the plaintiff had the ability to review the agreement, including the length of time the

plaintiff had to consider the agreement and whether he consulted with counsel; 5. whether the plaintiff was incarcerated at the time of the agreement; 6. and whether the plaintiff clearly understood the terms of the agreement.  Livingstone I, 12 F.3d at 1214; Davis, 42 F. Supp. 2d at 473-74.  A release-dismissal is not voluntary if the terms are vague or the plaintiff did not understand the scope of the agreement.  Livingstone I, 12 F.3d at 1211.

Here, the plaintiff was not incarcerated, and was represented by counsel.  The proposed agreement was offered by the prosecution, and was a handwritten list of items.  Pl. Br., Ex. W.  The plaintiff had approximately twenty-five minutes to consider the agreement before the on-the-record proceedings before Judge Moore.  The plaintiff contends that he believed these terms were not a final agreement, but the first step in moving towards ARD and a final agreement.

The Court must view the facts in a light most favorable to the plaintiff.  Given the subsequent proceeding on June 10, 2009, where different conditions were agreed to by the parties, the Court cannot find that the defendants have shown by clear and convincing evidence that there was a true meeting of the minds on the release-dismissal agreement of November 24, 2008.  Thus there was no voluntary agreement by the plaintiff.

C.  <u>Judicial Estoppel</u>

The defendants also argue that this Court should decide an issue of first impression, that the plaintiff and his counsel should be estopped from pursuing a civil lawsuit after telling a court that he would not do so.

"Under the doctrine of judicial estoppel, a court can defend the integrity of the judicial process by barring a party from taking contradictory positions during the course of litigation." <u>G-I Holdings, Inc. v. Reliance Insur. Co.</u>, 586 F.3d 247, 261 (3d Cir. 2009). Although "there is no rigid test for judicial estoppel, three factors inform a federal court's decision whether to apply it: there must be (1) irreconcilably inconsistent positions; (2) adopted in bad faith; and (3) a showing that estoppel addresses the harm and no lesser sanction is sufficient." <u>Id.</u> at 262 (internal quotations and alterations omitted).

The plaintiff's, and his counsel's, statements on-the-record on November 24, 2008 that he would not file a civil suit is seemingly irreconcilable with the filing of this civil suit. The other two factors are not met.

On the queston of bad faith, the plaintiff contends that it was his belief on November 24, 2008 that the terms provided by the D.A. were only suggestions and not a final agreement. Given this assertion, and the fact that different

11

conditions were in fact agreed to on June 10, 2009, the Court cannot conclude that the plaintiff's November 24, 2008 statements were made "in bad faith, i.e., with the intent to play fast and loose with the court."  Montrose Med. Grp. Participating Savings Plan v. Bulger, 243 F.3d 773, 781 (3d Cir. 2001).

In addition, judicial estoppel is an "extraordinary remedy that should be employed only when a party's inconsistent behavior would otherwise result in a miscarriage of justice." Id. at 785.  It should only be imposed when no more narrowly tailored sanction is available.  Here, the defendants will have the opportunity to use the plaintiff's November 24, 2008 statements before the jury, should the case go to trial.

The defendants rely on Chaffee v. Kraft Gen. Foods, Inc., 886 F. Supp. 1164 (D.N.J. 1995) to support their argument for judicial estoppel.  In that case, a district court refused to allow a plaintiff to pursue wage reimbursement from an employer when he had previously represented to a sentencing court that his sentence should be reduced because he "lost" those wages.  In that case, however, the court held that the plaintiff was not entitled to those wages under the unambiguous terms of his employment contract.  Id. at 1170-71.  No such independent reason for granting summary judgment in favor of the defendant exists here.

More fundamentally, in Town of Newton, the Supreme

Court noted that "it would be helpful to conclude release-dismissal agreements under judicial supervision" in order to protect against prosecutorial misconduct.  480 U.S. at 398 n.10.  An on-the-record statement is likewise a factor considered when evaluation the voluntariness of the agreement.  Neither the Newton Court nor the Court of Appeals has suggested that the presence of a judge when a purported agreement is made should supplant the remainder of the inquiry into the enforceability of a release-dismissal agreement.

An appropriate order shall issue.